Albert **EISBERG**, Joan Spence, Wilma Jaffe, Richard Wolf and Kenneth Pockett, Plaintiffs,

v.

**DUTCHESS COUNTY LEGISLATURE,** Dutchess County Legislature Democratic Members, Dutchess County Board of Elections, Patricia J. Hohmann, in her official capacity as Clerk of the Dutchess County Legislature, William J. Egan, individually and in his official capacity as a Dutchess County Election Commissioner, and Thomas Todd Bender, Defendants.

No. 98 Civ. 9125(BDP).

United States District Court, S.D. New York.

Feb. 19, 1999.

**284**

Richard B. Wolf, Wappingers Falls, NY, for plaintiffs.

Timothy J. Rooney, Jr., Bleakley Platt & Schmidt, White Plains, NY, for defendants.

## MEMORANDUM AND ORDER

PARKER, District Judge.

Plaintiffs Albert Eisberg, Joan Spence, Wilma Jaffe, Richard Wolf and Kenneth Pockett, members of the Dutchess County Democratic Committee, bring this action pursuant to 42 U.S.C. § 1983 against the Dutchess County Legislature, its Democratic Members, the Dutchess County Board of Elections, the Dutchess County Legislative Clerk, Patricia Hohmann, the Dutchess County Election Commissioner, William Egan, and Thomas Bender, alleging the violation of rights protected under the First and Fourteenth Amendments to the United States Constitution.

Richard Wolf was elected in November 1998 and thereafter recommended to the Dutchess County Legislature for the position of Commission of Elections pursuant to New York *Election Law* § 3–204. After he was ultimately not appointed to the position by the Legislature, Wolf and other members of the recommending body, the Dutchess County Democratic Committee, commenced this action challenging the constitutionality of the provision of § 3–204(4) that ostensibly permitted the Legislature to disregard the Committee's recommendation. The plaintiffs move for a preliminary injunctive relief pursuant to Fed.R.Civ.P. Rule 65, which, for the reasons set forth, is denied. The Court's findings of fact and conclusions of law follow.

The New York State Constitution provides that "[a]ll laws creating, regulating or affecting boards or officers charged with the duty of qualifying voters, or of distributing ballots to voters, or of receiving, recording or counting votes at elec-

tions, shall secure equal representation of the two political parties." Art 2, § 8. The Constitution further provides that "[a]ll such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature may direct." *Id.*

New York *Election Law* § 3–204(4) sets forth the procedures for appointing Commissioners of Election as follows:

Commissioners of election shall be appointed by the county legislative body, or in the city of New York, by the city council. Provided, however, that if a legislative body shall fail to appoint any person recommended by a party for appointment as a commissioner pursuant to this section, within thirty days after the filing of a certificate of recommendation with such legislative body, then the members of such legislative body who are members of the political party which filed such certificate may appoint such person. If none of the persons named in any of the certificates filed by a party are so appointed within sixty days after the filing of any such certificate, then such party may file another certificate within thirty days after the expiration of any such sixty day period recommending a different person for such appointment. If a party fails to file a certificate within the time prescribed by this section, the members of the legislative body who are members of such party may appoint any eligible person to such office.

*Election Law* § 3–204(4).

On November 17, 1998, the Dutchess County Democratic Committee, to which the plaintiffs belong, met pursuant to *Election Law* § 3–204 to select the party's nominee for Commissioner for a four-year term commencing January 1, 1999. Plaintiff Wolf won this election over the incumbent, defendant Egan. Because Wolf obtained a majority of the votes cast, the Chair of the Democratic Committee filed the required certificate with the Dutchess County Legislature, which stated that

Wolf "was recommended by a majority of said committee as a suitable and qualified person for appointment to the office of Commissioner of Elections."

The Dutchess County Legislature is comprised of thirty-five elected legislators, nine of which are Democrats. On December 3, 1998, a motion to appoint Wolf as Commissioner was presented to the full Legislature. At this meeting of the Legislature, several Democratic citizens who attended the Democratic Committee meeting to vote for the recommendation of Election Commissioner, expressed their concern with certain alleged irregularities in the procedures for voting at the meeting. Other citizens who were present disputed the existence of any irregularities. A Democratic legislator moved to table the recommendation, and the motion was seconded by another Democratic legislator. The Chair of the Legislature had the Democratic members vote first on the motion to table, and the motion was approved by a 5–3 vote. Subsequently, the entire Legislature voted to table the recommendation.

The plaintiffs claim that on December 16, 1998, the Legislature met again, but by a majority vote did not prevent the motion to appoint Wolf from being tabled. The defendants claim that the recommendation was not put on the agenda for the December meeting. In any event, under the statute, the Democratic legislators had the opportunity to appoint Wolf during the thirty day period of December 19 to January 18, 1999, but did not meet. During the next thirty days, from January 18 to February 17, 1999, the statute provides that the Dutchess County Democratic Committee could file another certificate recommending a different person for Commissioner. As of February 10, the Democratic Committee had not pursued this option. The statute further provides that if the Democratic Committee fails to file another certificate, the Democratic members of the Legislature may appoint any eligible person. Those steps have not yet occurred.

Plaintiffs essentially argue *Election Law* § 3–204(4) unconstitutionally allows the County Legislature to nullify the Democrats' "vote" for their nominee. Thus, pending the resolution of their § 1983 claim, they seek an order of this Court restraining: (1) the Dutchess County Legislature and Dutchess County Legislature Democratic Members from taking any action or vote under *Election Law* § 3–204(4) except to appoint Wolf as Commissioner, (2) the Chair of the Dutchess County Democratic Committee from causing or permitting to be conducted any meeting of the Democratic Committee where a purpose of the meeting is to nominate someone other than Wolf for Commissioner, (3) Egan from taking or directing any further action, vote or duties as Commissioner, and (4) directing Wolf to carry out the functions of Democratic Commissioner of Elections commencing February 15, 1999, and to receive the compensation and benefits for the position.

## DISCUSSION

*Standard*

■ In order to prevail on a motion for a preliminary injunction, a plaintiff generally must establish: (a) irreparable injury and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor. *Able v. United States,* 44 F.3d 128, 130 (2d Cir.1995). However, where, as here, the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, an injunction may be granted only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Plaza Health Laboratories, Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989). This higher standard reflects the "idea that governmental policies implemented

through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

*Likelihood of Success on the Merits*

■ For the purposes of this motion, this Court assumes the plaintiffs have met the irreparable injury prong of the general test for a preliminary injunction. Nevertheless, the plaintiffs have failed to establish a likelihood of success on their constitutional claim and therefore cannot prevail on this motion.

Plaintiffs contend that the statute "allow[s] the County Legislature, merely by legislative inaction, to take away the elected nominee of the Democratic Committee for its Commissioner, and thereby destroys the effectiveness of Plaintiffs' vote for that nominee and their exercise of political association in violation of the First and Fourteenth Amendments." Plaintiffs' Brief, p. 9. The plaintiffs contend that they are not asserting that the Legislature has no role except to rubber stamp the Democratic Committee's recommendation for Election Commissioner, but that the review is essentially restricted to a determination of whether the certificate is valid on its face.[1]

■ Election Commissioner is a state position created by the New York Constitution (Art 2, § 8). The New York Constitution provides that Election Commissioners "shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the legislature shall direct." Art 2, § 8. With the enactment of *Election Law* § 3–204(4), the New York Legislature provided that Election Commissioners are to be appointed by the county legislatures with the recommendation of the county committees. As one court has stated:

---

**1.** During oral argument, the plaintiffs stated that their basis for limited review by the Legislature was *Election Law* § 3–204(3) which

states, "The certificate filed shall be in such form and contain such information as shall be prescribed by the state board of elections."

It is evident that the New York State Constitution requires that the power to appoint election commissioners be vested in the people of the local government or their duly elected or appointed officers and the Legislature by enacting section 3–204 of the Election Law declares that the appointive power shall be delegated to the local legislative body. *Ryan v. Albany County Democratic Committee,* 68 A.D.2d 1014, 1015, 414 N.Y.S.2d 936, 938 (1979). Further, Election Commissioner is a public, not a party office. *See Broome County v. Conte,* 120 Misc.2d 1050, 466 N.Y.S.2d 1003 (N.Y.Sup.Ct.1983).

■ Accordingly, the New York Legislature, as authorized by the New York Constitution, did not provide the Democratic Committee with the right to appoint an Election Commissioner, but simply with a right to recommend. Technically, this recommendation derives from a vote by the Democratic Committee, but it does not carry with it the ultimate right to appointment to the position.

Specifically, the Democratic Committee's certificate filed with the Legislature states that Wolf was "recommended." The plaintiffs contend that the Legislature's failure to appoint, nullified their vote. This is simply not the case. The Legislature, within its power, chose not to follow the Committee's recommendation. This having occurred, the Committee has the option, pursuant to statute, to recommend another person, and if no new recommendation is forwarded, then the Democratic members of the Legislature can appoint any eligible person.

■ It is within the Legislature's power and discretion to appoint or not to appoint. The Court is not persuaded by the plaintiff's contention that *Election Law* § 3–204(3) limits the Legislature's review. Nothing in the text of this provision restricts the Legislature's prerogatives to appoint. Further, the New York Court of Appeals has considered similar appointment procedures and found them constitu-

tional. *See Lanza v. Wagner,* 11 N.Y.2d 317, 328, 229 N.Y.S.2d 380, 183 N.E.2d 670 (1962) (holding a statute constitutional that provided for the mayor to appoint members to the Board of Education from a list of nominees provided by a selection board). The Democratic Committee's statutory authority is only a right to recommend. That right has not been impinged or denied by the operation of the Legislature's discretionary decision not to appoint.

In *Thomas v. Wells,* 288 N.Y. 155, 157, 42 N.E.2d 465, 465–466 (1942), the chairman of a Democratic County Committee brought a proceeding to compel the Board of Supervisors to appoint a person he recommended for Election Commissioner after an initial motion to appoint failed. The Court of Appeals held that the statute merely gave the committee the right to make and file a recommendation that was a nomination for the office and nothing more. The court further stated that "[c]ourts are not at liberty to sit in judgment upon an imputation that improper motives may have influenced an exercise of such a discretionary sovereign power." *Wells,* 288 N.Y. at 157, 42 N.E.2d at 465–466. Since public offices are created for the benefit of the people, not the candidate, the office seeker simply has no contractual, vested or property right in the office. *See Lanza,* 11 N.Y.2d at 324, 229 N.Y.S.2d 380, 183 N.E.2d 670.

The plaintiffs rely on *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (holding state statute that banned political parties from endorsing candidates in the party primaries and regulated internal affairs of the party as unconstitutionally impinging on First Amendment rights), *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) (holding state statute that required all voters in a primary to be registered voters of that party as impinging on a party's associational rights), and *Democratic Party of the United States v. Wisconsin,* 450 U.S. 107,

101 S.Ct. 1010, 67 L.Ed.2d 82 (1981) (holding state statute unconstitutional that imposed on national party's associational rights because statute defined who could participate in the process leading to the selection of delegates in violation of the national party's rules). Plaintiffs argue that this authority establishes constitutionally grounded restrictions on the state and county legislatures' powers to limit the effectuation of the vote of the County Democratic Committee. This reliance, however, is misplaced. These cases involved a state statute's intrusion into the association and speech rights of parties when electing party candidates. In contrast, our case involves a recommendation for a public office, not the election of party candidates. Further, the Democratic Committee met to select their nominee for Election Commissioner, and, indeed, made their recommendation. A recommendation is all that the New York state constitution provided to the Democratic Committee. *Election Law* § 3–204(2) provides that "[p]arty recommendations for election commissioner shall be made by the county committee or by such other committee as the rules of the party may provide." Associational rights within the Democratic Committee were not impinged by denying them the right to appoint an Election Commissioner, since they never had such a right in the first instance.

Certainly, freedom of association means that a political party has a right to identify those individuals who constitute the association. *Eu,* 489 U.S. at 224, 109 S.Ct. 1013. Here, the Committee recommended a person with whom they would like to "associate," and the statute provides that if the Legislature ultimately fails to appoint a recommended person, the members of the appropriate party, here the Democratic legislators, can appoint another eligible person to the public office of Election Commissioner. Thus, only party members will ultimately choose whom they want as Election Commissioner.

■ The plaintiffs also contend that *Election Law* § 3–204(4) is unconstitutionally vague. A statute is unconstitutionally vague if it lacks clear definition or explicit standards such that it does not give a person of ordinary intelligence an opportunity to know what is prohibited. *Dae Woo Kim v. City of New York,* 774 F.Supp. 164, 169 (S.D.N.Y.1991).

Plaintiffs' argument is damaged by the fact that the New York courts that have interpreted this statute have found it to be clear. A New York court in affirming a lower court's decision that § 3–204(4) was constitutional, outlined the procedures for following § 3–204(4):

> Pursuant to Election Law 3–204(4), the county legislative body has 30 days to accept or reject the party's recommendation for Elections Commissioner. If it rejects the nominee, then the individual legislators of the relevant party ... may appoint a nominee and, apparently have 30 days in which to act. If they, too, fail to appoint a nominee, the party may file another certificate recommending a different person for appointment as Commissioner and the process begins anew. If the party fails to timely file a certificate, the [relevant party] members of the [legislature] are empowered to appoint any eligible person they wish.

*Matthews v. Zwirn,* 170 A.D.2d 708, 709, 567 N.Y.S.2d 270, 271–272 (1991). We read the procedures of § 3–204(4) in the same manner, and do not find them unconstitutionally vague. The statute sets out the procedure for the appointment of Election Commissioner and provides for several contingencies if an appointment is not made in response to an initial recommendation.

The plaintiffs also seem to claim that the statute is unconstitutional because it, in essence, allows the Legislature not to act. In *Ryan v. Albany County Democratic Committee,* 68 A.D.2d 1014, 414 N.Y.S.2d 936, however, the court stated:

> With the constitutional framework in mind, section 3–204 of the Election Law

establishes that in the event a party fails to make a timely recommendation which is declared invalid after the party's time to do so has expired, the *Legislature continues to be vested with not only the right but the duty to appoint an election commissioner.*

*Ryan,* 68 A.D.2d at 1015, 414 N.Y.S.2d at 938 (emphasis provided). Thus, the Legislature under § 3–204(4) does not have the option not to appoint a commissioner.

The plaintiffs, relying on *D'Angelo v. Velella,* 167 Misc.2d 719, 634 N.Y.S.2d 1011 (N.Y.Sup.Ct.1995), also contend that Egan is not entitled to continue as Election Commissioner in holdover status under New York *Public Officers Law* § 5, because, allegedly, the certificate recommending him for the 1996–1998 term was flawed and no certificate of appointment was filed. In *D'Angelo,* the certificate recommending the Election Commissioner to the council was only by a vote of the Executive Committee, the Commissioner failed to take the oath of office and to file a certificate of appointment, and the Republican members of the city council had appointed a new Commissioner. Here, the Democratic legislators have not appointed Wolf, nor have the plaintiffs sufficiently demonstrated defects in Egan's certificate. In any event, in *Ryan,* the court held that the appointment of Election Commissioner, despite a recommendation that had been declared invalid by a New York Supreme Court, complied with § 3–204 and that there was no restriction on the legislature's appointing authority where the county committee had failed to file a valid recommendation. *Ryan,* 68 A.D.2d at 1015, 414 N.Y.S.2d 936. Thus, an appointment by the legislature trumped any technical flaws in the recommendation.

## CONCLUSION

For the reasons stated above, the plaintiffs have failed to establish that they are likely to succeed on the merits of their claims and, consequently, are not entitled to extraordinary relief. Accordingly, the plaintiffs' motion for a preliminary injunction is denied.

**SO ORDERED.**